Larry Norris MOSLEY, Appellant,

v.

The STATE of Texas, State.

No. 2–81–198–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 24, 1982.

Frank W. Sullivan, III, Fort Worth, for appellant.

Tim Curry, Dist. Atty. and Victoria Fay Prescott, Asst. Dist. Atty., Fort Worth, for appellee.

Before HUGHES, JORDAN and RICHARD L. BROWN, JJ.

## OPINION

JORDAN, Justice.

This appeal is from conviction of murder. V.T.C.A., Penal Code, sec. 19.02.

The jury assessed punishment at 99 years imprisonment.

We affirm.

Appellant complains that (1) the evidence is insufficient to support the allegation in the indictment that the appellant caused the death of the decedent in Tarrant County, Texas; (2) the trial court erred in failing to instruct the jury on the law of circumstantial evidence; (3) in failing to suppress the confession; (4) in refusing to suppress evidence of the search of appellant's automobile; (5) in refusing to suppress State's Exhibit No. 16; (6) in refusing to suppress State's Exhibit No. 17; (7) in refusing to suppress State's Exhibit No. 18; (8) in refusing to suppress State's Exhibit No. 19; (9) in refusing to suppress State's Exhibit No. 20; (10) in refusing to suppress State's Exhibit No. 21; (11) in refusing to suppress State's Exhibit No. 22; (12) in refusing to suppress State's Exhibit No. 24; (13) in refusing to suppress State's Exhibit No. 37; (14) in refusing to suppress State's Exhibit No. 38; (15) in refusing to suppress State's Exhibit No. 39; (16) in refusing to suppress State's Exhibit No. 40; (17) in refusing to suppress State's Exhibit No. 41; (18) in admitting State's Exhibit No. 26, a color autopsy photograph of the decedent; (19) in admitting State's Exhibit No. 28; (20) in admitting State's Exhibit No. 29; (21) in admitting State's Exhibit No. 30; (22) in admitting State's Exhibit No. 31; (23) in admitting State's Exhibit No. 32; (24) in admitting State's Exhibit No. 34; (25) in permitting the State to elicit expert testi-

mony from a prosecutor as to the State's reasons for deleting exculpatory portions of confessions; (26) in admitting State's Exhibit No. 2, a color photograph of the decedent's body; (27) in admitting State's Exhibit No. 6, photograph of the decedent's body; (28) in admitting State's Exhibit No. 8, a color photograph of the decedent's body; (29) in admitting State's Exhibit No. 11, a color photograph of the decedent's body; and (30) in refusing to instruct the jury to disregard a prosecutor's comment on the appellant's failure to testify.

On May 5, 1980, Greyhound bus driver David Blassingame picked up two women passengers in Monahans, Texas. These women had tickets to Fort Worth, Texas, and were scheduled to arrive in Fort Worth at 4:10 a.m. Mr. Blassingame identified photographs of Rebecca Hampton and Penny Dale at trial as being the women who got on the bus at Monahans on the evening of May 5, 1980.

On the morning of May 7, 1980, Charles Smith discovered the body of Rebecca Hampton in a ditch along the side of Quail Road in Fort Worth, Tarrant County, Texas. An autopsy of the body of Rebecca Hampton revealed that the cause of death was massive bleeding due to multiple stab wounds to the chest, abdomen and pelvic region. Ms. Hampton had been stabbed twelve times.

On May 5 and 6, 1980, appellant had been living at 4817 South Hughes, Fort Worth, Tarrant County, Texas. On the morning of May 6, 1980, appellant's landlady, Fay Lias, noticed that appellant had stains on his shoes. These stains appeared to be a combination of blood and mud. In response to her inquiry, appellant stated that he had been in a fight with a man over the man's wife. Ms. Lias also noticed bloodstains on the back of appellant's pants.

That evening when Ms. Lias returned home from work, she noticed that the lock on the garage had been broken and appellant's car had been parked inside the garage. Ms. Lias looked inside appellant's car and saw bloodstains on the seat and in the back of the car. On May 7, 1980, Ms. Lias

reported what she had seen to the police, and requested that they come to her home.

On May 7, 1980, plainclothes police officer Richard Sylvest and five other plainclothes police officers arrived at appellant's residence. A search of appellant's car revealed what appeared to be blood on the front and rear seats, on the inside of the windows and in the trunk. This prompted Officer Sylvest to give appellant his Constitutional warnings and place him under arrest.

In the early morning hours of May 8, 1980, appellant confessed to killing two women whom he had picked up downtown at Commerce and 13th Street. Appellant stated that the girls informed him that they were looking for a place to stay. Appellant told the girls to get inside the car, and they proceeded to drive to the North Side. Appellant parked his car at McKinley and Long Street and fell asleep. Appellant claims that he awoke to find one of the girls going through his things. According to appellant, this girl had a knife in her right hand. A scuffle ensued, and appellant stabbed the shorter, heavier set girl who was sitting in the front seat. Appellant admitted to stabbing this girl in the chest, neck, and several times in the back.

Appellant then turned to the girl in the back seat, who he claims had her arm around his neck. Appellant pushed her into the seat and began to stab her. This girl grabbed at the knife, and appellant stated that he continued to stab her.

The first ground of error contends that the State's evidence was not sufficient to prove venue. Appellant also contends that he was entitled to a circumstantial evidence charge on the venue issue.

The indictment alleges that the appellant, on or about the 6th day of May, 1980, in Tarrant County, Texas, intentionally and knowingly caused the death of Rebecca Hampton by stabbing her to death with a knife.

The burden of objecting to the prosecution's failure to prove venue is on the defendant. *Vasquez v. State*, 491 S.W.2d 173 (Tex.Cr.App.1973). When the

issue of venue is not raised in the trial court, it is presumed that proper venue was proved. *Crocker v. State,* 573 S.W.2d 190, 204 (Tex.Cr.App.1978); V.A.C.C.P. art. 44.-24.

Appellant contends that this burden was met in the instant case by the motion for instructed verdict. In his motion for instructed verdict, appellant complains of the State's failure to "prove the elements of the offense as set forth in the indictment" and their failure "to prove the elements of the corpus delicti as set forth in the indictment."

■ We hold that such a conclusive statement of grounds is insufficient to preserve the issue of venue now raised on appeal. It is well settled that general objections are insufficient to preserve error for review. *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980). It is also axiomatic that objections must be timely made at trial, and that such objections must comport with the complaint subsequently raised on appeal. *See Crocker, supra,* at 204.

■ In his motion for new trial, appellant did make a more specific objection to the State's proof regarding venue; however such was not timely for purposes of preserving this issue for appellant review. *Gonzales v. State,* 486 S.W.2d 380 (Tex.Cr. App.1972). The Court in *Gonzales,* noting that no issue as to venue was raised prior to the filing of a motion for new trial and that nothing was before the court affirmatively showing that venue was not proven, held that under the circumstances proof of venue would be presumed.

■ Appellant also contends that he was entitled to a circumstantial evidence charge on the venue issue. We disagree. A charge on circumstantial evidence is inapplicable on the question of venue. *Curtis v. State,* 167 Tex.Cr.R. 536, 321 S.W.2d 587, 589 (1959).

In the instant case, appellant did not properly raise the issue of the sufficiency of the proof of venue in the trial court because his motion for an instructed verdict was too general to properly raise the issue of venue.

Although his subsequent motion for new trial did raise the issue more specifically, such was not timely under *Gonzales, supra.* Consequently, there being nothing before the court to affirmatively show that venue was not proven in the instant appeal, nothing is preserved for review.

Appellant's first ground of error is overruled.

The second ground of error contends that the trial court erred in failing to instruct the jury on the law of circumstantial evidence.

Appellant argues that his confession was not an unequivocal admission of the offense charged due to its exculpatory language, and the absence of an admission as to venue, rendered the confession circumstantial evidence, thereby necessitating a charge on circumstantial evidence.

Appellant makes no effort in his brief to point out which statements he considers exculpatory. Presumably appellant refers to the statements that he saw one girl going through his possessions, and that this girl had a knife.

■ Such an exculpatory statement merely goes to the issue of appellant's intent. It is well established that a charge on circumstantial evidence is not required where the intent of the accused is the only element not proven by direct evidence. *Glover v. State,* 566 S.W.2d 636, 638 (Tex. Cr.App.1978); *Baldwin v. State,* 538 S.W.2d 109, 112 (Tex.Cr.App.1976); *Littleton v. State,* 419 S.W.2d 355, 357 (Tex.Cr.App. 1967).

■ Alternatively, although appellant requested a circumstantial evidence charge, he failed to call the trial court's attention to his assertion that the confession was not sufficient to remove it from the circumstantial evidence rule. *See Patterson v. State,* 416 S.W.2d 816, 820 (Tex.Cr.App.1967). Each of appellant's requests for a circumstantial evidence charge were merely conclusive requests, with no indication as to the basis of the request, or to what aspect of the case the charge would apply. Conse-

quently, appellant's contention is not preserved for appellate review.

Appellant's second ground of error is overruled.

The third ground of error contends that the trial court erred in failing to suppress the confession. Appellant contends that he should have been given his "Miranda Warnings" prior to any request by the police that he execute a consent to search his automobile. Appellant further contends that because he was not warned prior to executing the consent to search, the subsequent search, arrest and confession were impermissibly tainted and therefore inadmissible.

Ms. Fay Lias, who lived at 4817 South Hughes, Fort Worth, Tarrant County, Texas, in May of 1980, testified that appellant was staying at her home on May 5 and May 6, 1980. Appellant, due to his rental relationship with Ms. Lias, had the right to use the entire house. However, he had no right to use the garage. Ms. Lias stated that part of the arrangement was that no one would use the garage, because it was locked and she did not have a key.

On the evening of May 6, 1980, Ms. Lias returned home from work and noticed that the lock on the garage had been broken. Appellant's automobile was parked inside the garage. Ms. Lias looked inside appellant's automobile and saw bloodstains on the seat and the back of the car. On May 7, 1980, Ms. Lias reported what she had seen to the police, and requested that they come to her home. Ms. Lias gave the police permission to search her home.

On May 7, 1980, at approximately 8:10 p.m., Officer Richard Sylvest and B.J. Porter, of the Fort Worth Police Department, went to 4817 South Hughes and spoke with appellant. Officer Sylvest testified that his purpose in going to 4817 South Hughes was to check out a lead that the appellant had driven his car into Ms. Lias' garage, and that there was a lot of blood inside the car. Officer Sylvest also testified that he did not feel he had probable cause at this point to secure a search or arrest warrant.

A total of six officers were on the scene at 4817 South Hughes, May 7, 1980, with four unmarked police cars. All of these officers were in street clothes, and none of the officers had their guns drawn. Officers Sylvest and Porter knocked on the door, which was answered by appellant. Appellant was at this time free to leave the scene. Appellant and the officers conversed, and the appellant related to the officers that he had been involved in a fight with a man named Weathers, and that he had cut Weathers on the arm and neck.

The officers then asked appellant if they could look at a car which was parked in the garage. Appellant told the officers that he would prefer to wait until Fay Lias, the owner of the residence, returned. After speaking with the officers briefly, appellant went back inside the house and shut the door. Several minutes later the officers knocked on the door again and informed appellant that they would like to try to contact Ms. Lias. Appellant gave the officers a phone number; however, the officers were unable to reach Ms. Lias. From this point on, appellant was, for the most part, outside with the police officers.

When Ms. Lias failed to return, at approximately 9:01 p.m., some fifty-one minutes after the police arrived, appellant agreed to allow the officers to search his automobile, and executed a written consent to this effect. During the fifty-one minutes that the police were at 4817 South Hughes prior to the execution of the consent to search appellant's automobile, the officers stood around talking to one another and, on occasion, talking to appellant. Officer Sylvest described this conversation as a "casual conversation".

Officer Sylvest testified that appellant signed the consent voluntarily. At this point, the officers looked inside the automobile, observing a large amount of what appeared to be blood inside the front and rear seats of the automobile, and on various parts of the upholstery and windows. Inside the trunk of the automobile, the officers observed what appeared to be blood and what appeared to be a piece of human

tissue. At this time Officer Sylvest placed appellant under arrest and read the *Miranda* rights.

■ It has long been held that every citizen has the privilege against self-incrimination and the right to counsel. U.S. Const.amend. V, VI; Tex. Const., art. 1, sec. 10. Before an accused may be subjected to custodial interrogation, he must be warned of the privilege against self-incrimination and the right to counsel, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant cites no portion from the record to indicate that the police conducted any type of interrogation, aside from a simple request that appellant authorized a search of his vehicle. Nor does appellant cite any authority for the proposition that a mere request for consent to search constitutes custodial interrogation for purposes of invoking the *Miranda* requirements.

■ A threshold determination that custodial interrogation occurred must be made before the *Miranda* warnings become applicable to any transaction. By custodial interrogation, the U.S. Supreme Court meant, "[Q]uestioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda, supra,* at 444, 86 S.Ct. at 1612.

In *Ancira v. State,* 516 S.W.2d 924, 926, 927 (Tex.Cr.App.1974), the Court of Criminal Appeals cited with approval *United States v. Phelps,* 443 F.2d 246 (5th Cir. 1971):

> [W]e have noted several significant factors which should be considered in determining whether or not a defendant is in custody. For example, probable cause to arrest, subjective intent of the police, focus of the investigation, and subjective belief of the defendant have all been deemed relevant.

Officer Sylvest testified that a call had been received from Ms. Lias that there was a car in her garage which was full of blood, and that she had been concerned that it might pertain to the two girls who had been killed. The officer testified that he did not feel at this point that he had probable cause to secure a search or arrest warrant. Rather, his object at this time was merely to "check out a lead". Appellant was not regarded as a good suspect for the murders at this time. The evidence shows that appellant would not have been detained by Officer Sylvest had he attempted to leave at the time that he answered the door. Appellant was allowed to enter and exit the house freely. Further, the officers at the scene were not clustered around appellant, nor were the officers constantly engaging him in conversation. And, what conversation did occur was "casual".

Appellant was not placed under arrest until after the police observed the blood and pieces of human tissue in his automobile. It is clear from the record that the police were merely making a general investigation into an unsolved crime and were checking on all sources of information available concerning the death of the two girls from Monahans. It has long been the rule that inquiries made as a part of a general investigation into an unsolved crime do not trigger the *Miranda* requirements. *Brown v. State,* 475 S.W.2d 938, 951 (Tex.Cr.App. 1972).

In *Allen v. State,* 536 S.W.2d 364, 370 (Tex.Cr.App.1976), the Court noted that:

> In light of appellant's call to the sheriff's office, it is clear Deputy Cook's inquiries were part of a general investigation into an unsolved crime, see *Brown v. State,* 475 S.W.2d 938 (Tex.Cr.App.1971), and were within the ambit of a general on-the-scene investigatory process, see *Tilley v. State,* 462 S.W.2d 594 (Tex.Cr. App.1971); *Higgins v. State,* 473 S.W.2d 493 (Tex.Cr.App.1971), which had not yet shifted to the accusatory or custodial stage, see *Adami v. State,* 524 S.W.2d 693 (Tex.Cr.App.1975).

■ Such is precisely the situation in the case at bar. Up to the point at which the police observed the inside of appellant's automobile, the information provided by Ms. Lias was no more than a lead, the investigation of which was merely one as-

pect of the general investigatory process of the unsolved murder of the two girls from Monahans. There was no focus to the investigation prior to the time the police observed the inside of appellant's automobile. Consequently, a conclusion that the investigation has shifted to the accusatory or custodial stage prior to this time is unmerited.

 Therefore, appellant's contention that all evidence acquired as a result of this search, including his confession, is impermissibly tainted under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962), is equally unavailing. To hold that a simple request by the police to search a vehicle as interrogation would be contrary to the better reasoned authority in this area. *Miranda* is inapplicable to requests for consent to search, and that therefore, all evidence obtained as a result of the search of appellant's automobile is properly admissible.

Appellant's third ground of error is overruled.

The fourth through seventeenth grounds of error contend that the consent executed permitting the police to search his automobile was involuntary.

Appellant's contention that his consent was not voluntary is grounded upon the absence of a warrant, the lack of *Miranda* warnings, and the fact that after appellant stated his desire to await the return of his landlady, six armed policemen waited for her return for a period of fifty-one minutes before appellant changed his mind and consented to the search.

 The recent decision in *Paulus v. State,* 633 S.W.2d 827, 850 (Tex.Cr.App. 1982), provides the pertinent standard for determining the validity of consent. Validity of consent is a question of fact which is determined from the totality of the circumstances. The burden is upon the State to show that the consent relied upon was freely and voluntarily given. The State must also show that the consent was positive and unequivocal, and not mere acquiescence to claims of lawful authority.

 At the outset, it is important to note that the validity of consent does not depend upon the giving of *Miranda* warnings. *DeVoyle v. State,* 471 S.W.2d 77, 80 (Tex.Cr.App.1971); *Draper v. State,* 539 S.W.2d 61, 63 (Tex.Cr.App.1976). Furthermore, the absence of a warrant would have no bearing on the issue of consent. Consent is a well-recognized exception to the warrant requirement. *Doescher v. State,* 578 S.W.2d 385, 389 (Tex.Cr.App.1979).

There remains appellant's suggestion that the number of officers present and the amount of time they remained on the scene taint the voluntariness of his consent. This contention, however, is of no avail when considered in context.

Appellant relies heavily upon *Paprskar v. State,* 484 S.W.2d 731 (Tex.Cr.App.1972), a decision which is distinguishable from the instant case. In *Paprskar,* forty armed officers converged on the Police Training Academy in preparation for the arrest of the accused. At approximately seven in the morning, the residence and business of the accused were completely surrounded by the officers. The appellant, Paprskar, his wife and several others were subsequently arrested. In the aftermath of this arrest, Paprskar's wife signed a written consent to search. The Court found that:

> [T]he undisputed evidence shows appellant's wife was not only under arrest, but had been physically abused and surrounded by a veritable posse of armed officers prior to the request for her consent to search. Her request to see her husband or to have the matter of consent referred to him was denied. Assuming she was informed she could refuse to consent, she was also told that if she did not consent, the officers would get a search warrant and that a Justice of the Peace was standing by on the Jacksboro Highway to do just that if necessary.

This, however, is a far cry from the facts in the instant appeal. Appellant's home was not surrounded by officers. Rather, only six plainclothes policemen were present. And, there is certainly no indication of physical abuse in the record. Nor

was appellant under arrest at the time he consented to the search.

When considered in context, it is clear that appellant's consent was freely and voluntarily given. The record simply does not substantiate appellant's conclusive claims that the consent was a mere acquiescence to claims of lawful authority. As in *Mendoza v. State,* 583 S.W.2d 396 (Tex.Cr. App.1979), the record does not reflect any evidence of coercion beyond that inherent in any situation where an officer asks a citizen to consent to a search. The consent was positive, unequivocal and freely given. Appellant's contention is therefore without merit, and the trial court properly admitted the evidence obtained from this search.

Appellant's fourth through seventeenth grounds of error are overruled.

The eighteenth through twenty-fourth and twenty-sixth through twenty-ninth grounds of error contend that the trial court erred by its admission of color photographs depicting the decedent's body and color photographs taken during the autopsy of the decedent.

Appellant would have this court formulate a new standard of admissibility with regard to photographic evidence of crime scenes and crime victims. Under appellant's novel proposition, color photographs would not be admissible where the State has black and white photographs available. Appellant does not challenge the admissibility of the photographs per se, but rather contends merely that the State was obligated to use black and white rather than color photographs.

Determination as to the admissibility of photographic evidence is made on the same basis as other types of evidence. This determination rests largely within the discretion of the trial court. *Martin v. State,* 475 S.W.2d 265, 267 (Tex.Cr.App.1972).

A photograph that is competent, material and relevant to the issues at trial is not rendered inadmissible merely because it is gruesome, provided that it is not offered solely for inflammatory purposes. *Blansett v. State,* 556 S.W.2d 322, 328–29 (Tex.Cr.App.1977).

Where a verbal description of the body would be admissible, a photograph depicting the same is equally admissible. It is only in those instances where the probative value of the photograph is very slight, and the inflammatory nature great, that it will be regarded an abuse of discretion to admit a photograph. *Kelly v. State,* 621 S.W.2d 176 (Tex.Cr.App.1981); *Harrington v. State,* 547 S.W.2d 621, 625–26 (Tex.Cr. App.1977); *Martin, supra,* 267–68.

The photographs in the instant case were relevant to the issue of appellant's intent, particularly in light of the intimations of self-defense contained in the confession. The photographs were highly relevant to show the jury the number and nature of the "defensive" stab wounds appellant inflicted. The color photographs of the scene where the body was discovered constituted part of the crime scene. These photographs served to prove the condition of the body as discovered by the police, as well as identification of the body.

The trial court did not abuse its discretion in the admission of the color photographs. Appellant's eighteenth through twenty-fourth and twenty-sixth through twenty-ninth grounds of error are overruled.

The twenty-fifth ground of error contends that the trial court erred in permitting the State to elicit expert testimony from a prosecutor as to the State's reason for deleting exculpatory portions of the confessions.

Detective Fred Raulston, of the Fort Worth Police Department, took appellant's confession. The State introduced the confession, with some statements deleted.

The following questions, while not an exhaustive list, exemplify the nature of the cross-examination and voir dire examination conducted by the defense in the presence of the jury.

BY MR. PADDOCK:

Q. Officer Raulston, when you warned Mr. Mosley of the green card warning

that you read here, did you tell him that at the time of trial this could be removed—anything could be removed from his statement that the District Attorney might want to do?

A. I didn't advise him anything about that.

Q. After you had typed it up—after you let him read it in longhand, and after you then had it typed up, did you ever warn him of that?

A. That anything would be deleted?

Q. Yes. They just offered State's Exhibit 15 that has stuff blocked out of it from the original statement, does it not?

A. That's true.

Q. You never warned him that they were going to do that, did you?

A. No, sir.

The State countered this line of questioning with the following:

BY MR. BORG:

Q. *Either side can offer evidence, can't they, Mr. Raulston?*

A. *Yes.*

BY MR. DICKENS:

*We would object, calling for a conclusion of law of this witness. Mr. Borg knows that is improper.* (Emphasis added.)

BY MR. BORG:

I will withdraw the question, Your Honor.

THE COURT:

Go ahead.

MR. DICKENS:

I would ask the Court to instruct the jury not to consider Mr. Borg's—

THE COURT:

No, I won't make that instruction.

MR. DICKENS:

Note my exception to that.

The defense then countered with the following examination:

BY MR. PADDOCK:

Q. On December the 2nd, 1980, did you have an opportunity to tell me that [in] 23 years of experience, you had never seen the State block out portions of a Defendant's statement unless it dealt with another crime?

A. Unless it involved another crime.

Q. Now, you took this statement, and you have read this a number of times, I presume?

A. Yes, sir.

Q. Now, the portions that are blocked out of State's Exhibit No. 15–A, does that involve another crime?

A. No, sir.

Q. So, you have never, in 23 years, seen the State take that out; is that right?

A. That's true.

Q. And that's why you didn't warn Mr. Mosely that the State would do it, isn't it? You had never seen it done.

A. I have never warned anyone that they would take anything out on any statement.

Q. You didn't have any reason to believe they would do it, did you?

A. I didn't know that they did.

Q. If you had of known they had done it, you would have told, "Now, Larry, I have to tell you, if you decide to sign this statement, the State of Texas may just take an erasure and erase out all they want to erase out when they are trying your case."

A. I can't say that I would have said that, Mr. Paddock.

Q. But, you might have, being a reasonable man sitting there saying—

MS. MOORE: Your Honor, at this time, the State is going to object. Counsel full well knows that we are bound by anything we introduce.

THE COURT: Sustained.

Shortly thereafter, appellant's counsel proceeded to question Officer Raulston on a line by line basis regarding each statement which was deleted from State's Exhibit 15–A.

The State responded by calling Mr. Rufus Adcock to explain to the jury that the State may delete portions of a statement which it does not believe. Mr. Adcock further testified that the State is bound by a statement which it offers, because the State vouches for its truth and veracity.

The trial court, outside the presence of the jury, informed appellant's trial counsel that the basis for admitting the testimony of Mr. Adcock was that defense counsel had opened the door to the matter, by implying in front of the jury that the State had done something improper. The trial court also made it clear to defense counsel that the defense was equally entitled to call witnesses in rebuttal to Mr. Adcock's testimony.

"The rule is that when the State introduces an exculpatory statement or confession of a defendant, it is then bound to disprove it and failure to do so is grounds for acquittal." *Glover v. State,* 566 S.W.2d 636, 637 (Tex.Cr.App.1978).

It is well established that evidence which is used to fully explain a matter which is opened up by the other party need not be ordinarily admissible. *Parr v. State,* 557 S.W.2d 99, 102 (Tex.Cr.App.1977); *Williams v. State,* 464 S.W.2d 842 (Tex.Cr.App. 1971).

We hold that the testimony at issue was merely a response to defense counsel's contentions and implications in front of the jury that the State had done something devious and improper by the deletion of parts of appellant's confession. As such, appellant is in no position to complain on appeal about the State's response to these suggestions.

Appellant's twenty-fifth ground of error is overruled.

The thirtieth ground of error contends that the trial court erred in refusing to instruct the jury to disregard a prosecutor's comment on the appellant's failure to testify.

On re-direct of Detective Raulston, the prosecutor made the following statement, "Either side can offer evidence, can't they . . . ?", as set out more completely in ground of error twenty-five. Defense counsel objected on the ground it was calling for a conclusion. The prosecutor then withdrew the question. When appellant's trial counsel asked the trial court to instruct the jury to disregard the comment, the court refused.

Appellant's trial objection does not comport with his contention on appeal. Only such grounds as were urged at trial may be considered on appeal. *Lejeune v. State,* 538 S.W.2d 775, 780 (Tex.Cr.App. 1976). *Bouchillion v. State,* 540 S.W.2d 319, 320 (Tex.Cr.App.1976).

Even assuming arguendo that appellant had properly preserved this matter for appellate review, no error is presented. To constitute an impermissible comment on the failure of the accused to testify, the implication that the language used by the prosecutor had reference to the failure of the accused to testify must be a necessary one. It is not sufficient that the language might be construed as an implied or indirect allusion to the failure of the accused to testify. *Todd v. State,* 598 S.W.2d 286, 294 (Tex.Cr.App.1980).

Appellant's thirtieth ground of error is overruled.

Judgment is affirmed.