COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NOS.
2-05-024-CR 

       2-05-025-CR

 

 

SHANE LEE HALE                                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM
THE 271ST DISTRICT COURT OF WISE COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








In two points, Shane Lee Hale
asserts that the trial court abused its discretion by allowing evidence of
child pornography found on a computer at Hale=s home and by failing to grant a mistrial regarding the same issue.[2]  We affirm.

II. Background

In May of 2002, April
discovered her young daughter Miriam performing oral sex on Miriam=s younger half-brother, Mike.[3]  After questioning Miriam, April determined
that Miriam had learned to do this from her father, Hale, and that she had also
done it with @Uncle Shane,@ Michael Shane Gardner.  At
trial, Gardner testified to an incident that had occurred when he had been
visiting Hale.  While Gardner was
watching television, Hale called him to the bedroom, where Hale wanted him to
try something that Hale himself had been doing. Gardner stated that when he
entered the room, Miriam began to dress herself, only to stop when told by Hale,
A[N]o, it was okay.@  At Hale=s behest, Gardner proceeded to have sexual contact with Miriam,
touching her genitals with his mouth while Hale was simultaneously having
sexual contact with Miriam by having her mouth contact his penis.








Gardner also testified that
Hale did not direct Miriam and that she seemed to already know what to do.  According to Gardner, he had lain down on the
bed, and Hale placed Miriam on him such that Gardner=s mouth was in contact with her genitals.  Eventually, Miriam changed positions so as to
place her mouth in contact with Gardner=s penis while Hale caused his own mouth to have contact with Miriam=s genitals.  Finally, Hale
placed Miriam on Gardner such that there was genital contact between Miriam and
Gardner before Hale and Miriam engaged in genital contact.








Gardner also testified that
Hale claimed that Miriam enjoyed engaging in this type of sexual contact, and
that Hale claimed that he had engaged in such behavior with Miriam on a
previous occasion while at a deer lease.[4]  According to Gardner, Hale told him that he
was using the restroom when Miriam entered and asked if she could touch his
penis.  From this act of touching
allegedly initiated by Miriam, the sexual contact between her and Hale had
progressed to oral-genital contact, with Miriam placing her mouth on Hale=s penis and with Hale placing his mouth on Miriam=s genitals, all of which eventually progressed to genital-to-genital
contact.

Gardner testified that he was
currently serving a thirty-five year prison sentence in his own case.  Further, he had appealed his case and had
reached an agreement with the prosecution regarding a reduction of the upper
limit of the sentence that he could receive in any potential re-trial of his
case, had given a written confession to a Texas Ranger from the Department of
Public Safety,[5]
and had pleaded guilty to his own charges.








Miriam also testified at
trial.  According to Miriam, Hale would
always come at night to get her to engage in sexual activity with him.  Miriam testified that if she was asleep, Hale
would wake her up and take her to his bedroom to engage in the sexual activity
with her.  Miriam also stated that Hale
would have her touch his AWeiner@ with her mouth and that Hale had shown her how to perform such
conduct, and Miriam in fact demonstrated to the jury what she had been
instructed to do.  Miriam could not
remember how many times Hale had made her engage in such conduct, but she
remembered that he had done so Aa lot.@  She also testified that Hale=s wife had never been present on the occasions when Hale would come to
take her to his bedroom to engage in sexual contact with her.  She also recalled an occasion when Gardner
and Hale had been involved in sexual activity with her.  According to Miriam, on that occasion Hale
made her Asuck his
Weiner and go up and down,@ and she had been made to perform the same act with Gardner.  Finally, Miriam testified that her mother,
April, had found her engaging in such conduct with Mike on one occasion.








The defense presented the
testimony of Hale, his mother, and his wife. Hale completely denied the
allegations against him.  The defense
claimed in effect that April had coached Miriam into making the accusations in
response to Hale=s having broached the idea of becoming the
custodial parent of Miriam, as opposed to April=s remaining as
Miriam=s custodial
parent.  On
cross-examination, Hale also testified to a conspiracy among Gardner,[6]
April, Miriam, and Texas Ranger Kenny Ray concerning the sexual abuse
allegations, and he denied any knowledge of a certain pornographic website on
his computer (the ALolita@ website), while admitting that he had seen pornographic material on a
computer.  He did not have an explanation
for how the computer showed Ahits@ on the
website.

After considering all of the
evidence, the jury convicted Hale of two counts of aggravated sexual assault of
a child.  During the punishment phase of
the trial, the State introduced the testimony of three girls who had all been
fifteen years old when Hale, who was married at the time and after having given
them beer, had tried to have sex with one of them, and had succeeded in having
sex with the other two.

Additionally, the State
introduced the testimony of Daniel Baxter, the uncle of one of the two
fifteen-year-old girls Hale had seduced, who testified that Hale had admitted
how he Aliked women before they got hair@ and how he liked the look of women=s genitals.  According to
Baxter, he was disgusted by some of Hale=s comments and by Hale=s using his hands to illustrate how, in his opinion, female genitalia
were Aso perfect@ at a
certain time.








Hale=s mother and wife testified that Hale had no felony convictions, had
always provided for his family, and had wanted to adopt his wife=s two sons even before he and his wife had married.  They also testified that they would have no
problem permitting Hale to have unsupervised access to six-year-old females
and/or fifteen-to-sixteen-year-old females. 
Thereafter, the jury deliberated and subsequently the trial court
imposed the sentences returned by the jury, two life terms and a $10,000 fine,
but ordered that Hale serve the sentences concurrently, not consecutively as
the State had requested.

III.  The Computer-Pornography Testimony

A. The Assertions of the
Parties








In his first point, Hale
asserts error on the part of the trial court in failing to exclude testimony
that a computer was found at his residence containing child pornography.  First, Hale asserts that the child pornography
is only relevant to show conformity of character, which is impermissible, and
second, any probative value of the evidence is outweighed by its unfair
prejudice.   We agree with Hale that the
Texas Rules of Evidence provide that any relevant evidence is generally
admissible except as provided by the rules, 
Montgomery v. State, 810 S.W.2d 372, 377 (Tex. Crim. App. 1991)
(op. on reh=g), but that
Rule 404 prohibits evidence of other crimes, wrongs, or acts to prove the
character of a person in order to show action in conformity therewith,  Tex.
R. Evid. 404(b); Santellan v. State, 939 S.W.2d 155, 168 (Tex.
Crim. App. 1997).  However, he also
points out that evidence of extraneous offenses may be admissible for other
purposes, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident upon proper notice by
the proponent of the evidence to the opposing party, Santellan, 939
S.W.2d at 168; Taylor v. State, 920 S.W.2d 319, 322 (Tex. Crim. App.), cert.
denied, 519 U.S. 951 (1996); Montgomery, 810 S.W.2d at 387-88, and
that once the trial court determines that the evidence is relevant, and upon
proper objection, the trial court must determine whether the evidence complies
with Rule 403,  Santellan, 939 S.W.2d
at 169.  Rule 403 provides that relevant
evidence may still be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. 
Tex. R. Evid. 403.  The trial court should look at four factors
in performing this balancing test:

(1)    the evidence=s inherent probative value;

(2)    its potential to impress the jury in some irrational but
indelible way;

(3)    the amount of trial time the proponent needs to develop such
evidence; and 

(4)    the proponent=s need for the evidence.

 

Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); Jones v. State,
962 S.W.2d 158, 165 (Tex. App.CFort Worth 1998, no pet.).








The State responds that any
character-conformity complaint Hale has made on appeal has not been preserved
for this court=s review due
to Hale=s failure to have articulated his character-conformity-based complaint
in the trial court.  Additionally, the
State asserts that the remaining portion of Hale=s first point cannot be sustained because the complained-of evidence
should have been excluded under the balancing test enunciated in Rule 403.  The State argues that the complained-of
evidence was admissible because (1) Hale Aopened the door@ to the
admission of the evidence by his cross-examination of one of the State=s witnesses, which injected into the trial a matter to which the State
was entitled to respond, (2) the admitted evidence was merely cumulative of
other evidence that Hale himself injected into the trial, (3) the evidence was
admissible to demonstrate Hale=s motive in having committed the crimes against his daughter, and (4)
any error alleged by Hale was harmless, to wit, the evidence failed to have any
substantial and/or injurious impact or influence upon the jury=s verdicts.

B. Legal Analysis








We first address the State=s waiver argument.  We agree
with the State that to preserve a complaint for appellate review, the
complaining party must have lodged a timely and specific objection, motion, or
request at the trial court level that stated the grounds for the ruling sought
by the requesting party with sufficient clarity to make the trial court aware
of the complaint or request and the specific grounds therefor.  See Tex.
R. App. P. 33.1; Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim.
App. 2005).  We also agree with the State
that even some constitutional claims are subject to being waived for appellate
review if they are not preserved in the trial court by compliance with the
aforementioned rules regarding preservation of error.  See Jimenez v. State, 32 S.W.3d 233,
235 (Tex. Crim. App. 2000).  Why?  Three reasons:  1) to notify the trial judge of the exact
basis of the relief requested so as to provide the judge an opportunity to make
a decision relative to that basis when he or she is in a position to do so; 2)
to afford the opponent thereof an opportunity to respond thereto in a
substantive fashion, e.g., Reyna, 168 S.W.3d at 179; Janecka v. State,
823 S.W.2d 232, 243-44 (Tex. Crim. App. 1992) (op. on reh=g); Zillender v. State, 557 S.W.2d 515, 517 (Tex. Crim. App.
1977); and 3) fairnessCA[f]airness to all parties requires a party to advance his complaints
at a time when there is an opportunity to respond [to] or cure them,@ Loredo v. State, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004).

We also agree with the State
that in general when an appellant has denied the trial court any opportunity to
rule on an error espoused on appeal, nothing exists for the appellate court to
review relative to that complaint because there is no ruling from the trial
court for the appellate court to assess. 
See Flores v. State, 871 S.W.2d 714, 720 (Tex. Crim. App. 1993), cert.
denied, 513 U.S. 926 (1994).  Under
such circumstances where the complaining party has failed to effectively
communicate his or her desire to the trial court, appellate courts should hold
that the complaints advanced only on appeal have been lost.  See Lankston v. State, 827 S.W.2d 907,
909 (Tex. Crim. App. 1992).








Additionally, a complaint may
be waived if the complaint on appeal does not comport with the objection lodged
in the trial court.  See Reed v. State,
927 S.W.2d 289, 291 (Tex. App.CFort Worth 1996, no pet.); Judd v. State, 923 S.W.2d 135, 138
(Tex. App.CFort Worth
1996, pet. ref=d).  This is true even of some constitution-based
complaints.  See, e.g., Holland v.
State, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991).

C. Application

The initial testimony
concerning a pornographic website occurred during the cross-examination of the
State=s witness, Texas Ranger Kenny Ray:

A. .
. . There=s
some details that Gardner added that I had no knowledge of that later proved to
be true.

 

. . .
.

 

Q.  Can you be specific as to what they [sic]
particular detail was?

 

A.  He indicated that there was a computer in
Shane Hale=s
house that Shane used to access a website that contained pedophile images.  I had no knowledge of that prior to.
[Emphasis supplied.]

 

Q.  Did you recover a computer?

 

A.  I did, indeed, sir.

 

. . .
.

 

Q.  And you looked at the computer?

 

A.  We didn=t analyze the computer that
night.  We took the computer and had it
analyzed forensically.








. . .
.

 

Q.  So if you saw what looked like a stack of
magazines, or a stack of what could be printouts from the computer, or
pictures, you looked through that stuff?

 

A.  Yes, sir.

 

After this testimony, a discussion at the bench outside the hearing of
the 

 

jury
occurred, part of which is as follows:

 

PROSECUTOR:
. . . [T]he accessing the Lolita website . . . I=d
like to ask that that was followed up on and investigated to corroborate
it.  And . . . the specifics that . . .
the Defense has raised that Michael Shane Gardner said that he had no knowledge
of . . . . I believe the Defense has opened the door to that.

 

. . .
.

 

THE
COURT: I think, Counsel, this is more in the line of you asked what he thought
if it was later corroborated, Mr. Gardner=s statement and he was
testifying to that and he said he found the computer with pornographic
sites.  We can go into that.

 

. . .
.

 

DEFENSE
COUNSEL: . . . I would object to that line of questioning as being B under
Rule 403, as being more prejudicial than probative, and I would ask for a
running objection as to questions about the website and the computer. [Emphasis
supplied.]

 

THE
COURT: Overruled.

 

DEFENSE
COUNSEL:  May we have a running
objection?

 

THE
COURT:  I will give you a running
objection.

 








On redirect examination by
the State=s counsel,
the following exchange occurred:

Q.  Ranger Ray, you said that you recovered the
Defendant=s
computer?

 

A.  Yes, ma=am.

 

Q.  Did you have it forensically analyzed?

 

A.  Yes, ma=am.

 

Q.  And did that reveal that he had, indeed,
accessed the Lolita websites?

 

A.  Yes, ma=am.

 

Q.  What is the Lolita website?

 

A.  Well, I=ve never been there, but I
understand it=s a
pornographic website that has links and access to where people can view child
pornography.

 

Hence, an examination of the
objection to this testimony reveals that there was a Rule 403
probative-verus-prejudicial objection made, but not a Rule 404  conformity-of-character objection made, and
because Hale did not direct us to such an objection in the record, the latter
is not preserved for our review. 








We next turn to the preserved
Rule 403 objection.  An examination of
the record reveals that Hale=s counsel=s
examination of Ray, a portion of which has previously been set forth, was
attacking the accuracy of a statement given by Gardner which had been written
out by Ray and signed by Gardner. Part of Ray=s response to the attack-of-accuracy questioning was that it contained
details that no one else had revealed and that had turned out to be true, such
as the pornography-laden computer.  No
objection was made when Ray=s response to a question from Hale=s counsel identified the Apedophile@-laden
computer, and in fact, two more questions were asked about the computer. Hence,
from this point the proverbial horse was out of the barnCthe jury was thereafter aware that there was a computer found in Hale=s house that contained Apedophile images.@  The subsequent Rule 403
objection was locking the stable door after the horse was stolen.[7]  Therefore, the later testimony that the
computer did in fact contain pornographic images, the Lolita websites, was
merely the State=s walking
through the door opened by Hale, and the State clearly stayed within the scope
of the pornographic computer information.

[O]therwise
inadmissible evidence may be admitted if the party against whom the evidence is
offered Aopens
the door.@  But, the party offering the evidence may not Astray
beyond the scope of the invitation.@ . . . AThe
wall, attacked at one point, may not be fortified at another and distinct
point.@

 








Schutz v. State, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997) (citations omitted). As
this court has stated, A[i]t is well
established that evidence which is used to fully explain a matter which is
opened up by the other party need not be ordinarily admissible.@  Mosley
v. State, 643 S.W.2d 212, 222 (Tex. App.CFort Worth 1982, no pet.). 
Further, when Athe
testimony at issue was merely a response to defense counsel=s contentions and implications in front of the jury . . . appellant is
in no position to complain on appeal about the State=s response to these suggestions.@  Id.

Therefore, we hold that the
trial court did not err by allowing the 
complained-of testimony about the pornography-laden computer and the ALolita@ website
because the State was merely walking through the door opened by Hale, and Hale=s objection to the pornography-laden computer testimony occurred well
after the evidence was before the jury. 
We overrule Hale=s first
issue.

D.  Harm Analysis








Further, had error occurred,
we would hold that Hale would be unable to show requisite harm.  Harm stemming from a trial court=s ruling admitting or excluding evidence is reviewed under Rule
44.2(b) of the Texas Rules of Appellate Procedure, since this is not an
asserted error of constitutional dimension. 
See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998).  Texas Rule of Appellate Procedure
44.2(b) reads, AAny other error,
defect, irregularity, or variance that does not affect substantial rights must
be disregarded.@  Tex.
R. App. P. 44.2(b).  A substantial
right is affected only when Athe error had a substantial and injurious effect or influence in
determining the jury=s verdict.@  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997). 
Evidence of guilt must be considered in conducting the harm
analysis.  See, e.g., Motilla v. State,
78 S.W.3d 352, 357-58 (Tex. Crim. App. 2002).

E.  Application

This is hardly the
problematic case of a single witness who recants, who has motive to fabricate
abuse allegations, who has a history of known fabrications, and who has
threatend the alleged adult abuser. 
Here, the evidence is from multiple witnesses without a verified
nefarious motive, without a history of lying and without threats from the
abused of same.  A complete review of the
record reveals that the admission of the evidence in all likelihood would not
have harmed Hale.  Hale=s first issue is overruled.

IV.  Mistrial

Hale complains in his second
issue that the trial court erred by not declaring a mistrial following further
testimony concerning the Lolita website. 
 A.  The Testimony and the Motion for Mistrial

During the cross-examination of Hale at guilt-innocence phase of
trial, the following exchange occurred:

 

Q: .
. . .  There was a computer in your
residence; is that right?








A:  Yes, sir.

 

Q:  Do you have access to a computer?

 

A:  Yes, sir.

 

Q:  Do you view pornographic material on your
computer?

 

A:  No, sir.

 

Q:  Never?

 

A:  I=m not saying I=ve
never seen pornographic material on a computer, no.  I mean I have, yes.

 

Q:  Did you review the B the
results with regards to the B I guess, the forensic
computer analysis of your computer?

 

A:  No, I don=t recall that.

 

Q:  Do you know what a Lolita website is?

 

A:  No, sir.

 

Q:
You have no idea?

 

A:  It=s B I
guess it=s a
pornographic website is what=s been said.

 

Q:  Well --

 

A:  I mean, I=ve never been there, if that=s
what B if
that=s
what you=re
asking.

 

Q:  So you=re not aware that there were
208 hits B

 

DEFENSE
COUNSEL: Objection.

 

Q.  B on your computer?

 








[DEFENSE
COUNSEL]: Objection.  Counsel is trying
to assert facts not in evidence with some document in evidence.

 

THE
COURT: Sustained.

 

[DEFENSE
COUNSEL]: I=d ask
that B

THE
COURT: But your legal objection is what, Counsel.

 

[DEFENSE
COUNSEL]: Sidebar by Counsel.  It=s
hearsay; relevance.

 

THE
COURT: Sustained as to hearsay.

 

[DEFENSE
COUNSEL]: I would ask that the jury be instructed to disregard his question.

 

THE
COURT: The jury will disregard the question.

 

[DEFENSE
COUNSEL]: We would ask for a mistrial.

 

THE
COURT: Denied.

 

B.  Standard of Review








A trial court=s denial of a motion for mistrial is reviewed under an abuse of
discretion standard.  See Simpson v.
State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert. denied, 542
U.S. 905 (2004).  A mistrial is
appropriate only for Ahighly
prejudical and incurable errors.@  Id. (quoting Wood v.
State, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)).  It should be used by a trial court to end
proceedings when faced with error so prejudical that Aexpenditure of further time and expense would be wasteful and futile.@  Wood, 18 S.W.3d at
648.  Ordinarily, a prompt instruction to
disregard will cure error associated with an improper question and answer.  See Simpson, 119 S.W.3d at 272.

When a trial court is faced
with a motion for mistrial after an objection has been sustained and an
instruction to disregard has issued, it Ain effect . . . conducts an appellate function: determining whether
improper conduct is so harmful that the case must be redone.@  Hawkins v. State, 135
S.W.3d 72, 77 (Tex. Crim. App. 2004). 
The question of whether a mistrial should be granted thus involves Amost, if not all, of the same considerations that attend a harm
analysis.@  Id. 
The appropriate test for evaluating whether the trial court abused its
discretion in overruling a motion for mistrial is therefore the test originally
set out by the Texas Court of Criminal Appeals in Mosley v. State, 983
S.W.2d 249, 259 (Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070
(1999), for analyzing whether the trial court abused its discretion in
overruling a motion for mistrial during closing guilt-innocence argument.  Cf. Hawkins, 135 S.W.3d at 77
(extending Mosley test to closing non-capital punishment phase); Martinez
v. State, 17 S.W.3d 677, 693-94 (Tex. Crim. App. 2000) (extending Mosley
test to punishment phase of a capital trial).








Under Mosley, in
determining whether the trial court abused its discretion in denying a motion
for mistrial, an appellate court must consider (1) the severity of the
misconduct (its prejudicial effect); (2) the curative measures undertaken by
the court or the prosecutor; and (3) the certainty of the punishment assessed
absent the misconduct.  See Martinez, 17
S.W.3d at 693; Primes v. State, 154 S.W.3d 813, 815 (Tex. App.CFort Worth 2004, no pet.).

 

C.  Application

Without determining the
fundamental question of whether the hearsay objection should have been
sustained, we turn to the three-part Mosley test: (1) the evidence of
the Lolita website was already properly before the jury through  Ray=s testimony, and hence the prejudicial effect of the testimony of the
website through Hale was minimal; (2) the jury was immediately instructed to
disregard the question referencing the Lolita website; and (3) a review of the
record leads to the inescapable conclusion of the certainty of the conviction
assessed.  Hale=s second point is overruled.

V.  Conclusion

Having overruled Hale=s two points, we affirm the judgment of the trial court.

 

PER CURIAM

 

PANEL F:    MCCOY, HOLMAN, and GARDNER, JJ.

 

DO
NOT PUBLISH








Tex. R. App. P. 47.2(b)

 

DELIVERED:
August 31, 2006











[1]See Tex. R. App. P. 47.4.





[2]This is the second appeal in this
matter.  This case was originally
remanded for a new trial, following a plea agreement to a forty-year sentence,
over the issue of a non-testifying accomplice statement.  Hale v. State, 139 S.W.3d 418, 423
(Tex. App.CFort Worth 2004, no pet.).





[3]We have used the fictitious names AApril,@ AMiriam,@ and AMike@ for protection of the minor
children in this opinion.





[4]Gardner also testified that Hale
said that Miriam had claimed that her mother=s husband had enjoyed engaging in the same type of sexual
contact. April testified, however, that Miriam had never made any type of
sexual abuse outcry against April=s current husband, who married April near the time that she
had discovered Miriam performing oral sex on Mike.





[5]According to the Texas Ranger, in
securing the non-custodial, written confession from Gardner, Gardner had
slumped in the seat of the Texas Ranger=s car and said, AI=m glad it=s finally over.@ 
Likewise, Gardner testified that he had felt like a Agreat weight@ had been lifted when he spoke with
the Texas Ranger.





[6]Apparently Gardner, under this
theory, is serving a thirty-five year sentence for fabricating testimony of his
abuse of Miriam in order to further this conspiracy.





[7]A[T]he English aphorism is also very
old.  We find it in John Gower=s Confessio amantis (1390): >For when the grete Stiede Is stole,
thanne he [Negligence] taketh hiede, and maketh the stable dore fast.=@ 
Charles Earle Funk, Jr., 2107
Curious Word Origins, Sayings & Expressions 701 (1993).