COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-318-CR
 
 
AMANDA 
MARIE MASSIMO                                                   APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        In 
six points, appellant Amanda Marie Massimo challenges her misdemeanor conviction 
for harassment by electronic communication. In points one and two, Massimo 
complains the trial court erred by allowing the introduction of certain evidence 
and failing to grant a continuance after ruling the evidence could be 
introduced. In points three and four, Massimo’s complaints center on the 
admission of certain e-mails, State’s Exhibits 1 and 6. Finally, in points 
five and six, Massimo complains that the evidence was not legally or factually 
sufficient to support the jury’s guilty verdict. We will affirm.
II. Factual and Procedural Background
        Renee 
Kreshak was a friend of Amanda Massimo and Melissa Taylor in Lewisville, Texas, 
having known Taylor since high school and Massimo about a year and a half to two 
years. Massimo and Taylor had a disagreement, leading to a physical altercation 
and a police complaint being filed by Taylor. Shortly thereafter, beginning 
October 22, 2002, Taylor began receiving threatening e-mails, which she believed 
were sent by Massimo, the first of which was identified at trial as State’s 
Exhibit 1.[1]  At one point in her testimony, 
Taylor did not recall Massimo’s e-mail address although she recalled it later 
and, as she never saw her send the e-mail, could not say for certain who was 
sending the threatening e-mail. Taylor was fearful and felt threatened, and 
believed the e-mail came from Massimo because of the content. The language used 
was consistent with Massimo’s and the account address, babycol20@yahoo.com, 
was recognized by Taylor as Massimo’s, although Taylor stated that Danielle 
Jones, and Kreshak besides Massimo, knew about the contents of the e-mail. 
Kreshak had previously witnessed Massimo sending Taylor a threatening e-mail 
which in part stated that “I will kill you and your two kids,” but it was 
not State’s Exhibit 1.[2]  The threatening 
e-mail witnessed by Kreshak was sent to rodeosweetheart12002@yahoo.com which was 
known by Kreshak to be Taylor’s e-mail address. When Kreshak subsequently went 
to Taylor’s home, she was told by Taylor that Massimo had been e-mailing her 
and threatening her and her children.  On October 29, 2002, Taylor reported 
the threatening e-mails to police.
        The 
next day, the Flower Mound Police Department assigned the e-mail complaint to 
Detective Sparby, who twice attempted to contact Massimo by phone on November 11 
and left a business card on the door of her home the following day. Sparby 
received no immediate response to her phone calls and business card until she 
e-mailed Massimo at babycol20@yahoo.com, the address provided to her by Taylor.[3]  The following series of e-mails, comprising 
State’s Exhibit 6, were exchanged through November 16, 2002:
 
 
Amanda,
 
I 
am a detective with the Town of Flower Mound Police Department and I need to 
speak with you. Please contact me at the phone number below.
Thanks
 
Detective 
Misty Sparby
Crimes 
Against Persons
Flower 
Mound Police Department
972.874.3348 
Direct Line
972.874.3362 
Fax
 
[At 
3:20 p.m. that same day, a reply was received from babycol20@yahoo.com:]

        Dear 
Misty,
 
Can 
you e-mail me back and tell me why you want to speak with me.
 
Thanks
 
Amanda
 
[Detective 
Sparby responded:]
 
It 
is in reference to harassment.
 
Thanks
 
  
[On 
November 14, Detective Sparby was sent the following:]
 
First 
off i did not harass nobody, melissa taylor broke into my e-mail and sent it 
herself, and used other people to do it also, she knew what my password was in 
the first place, i had to change my whole account because it was tampered. 
second i do not need melissa taylor’s mom calling my house and calling me a 
bitch, etc. And my mom is about to file false accusation charges with the state 
on her.
 
[Detective 
Sparby subsequently wrote:]
 
Amanda,
 
This 
issue is not going away, I need you to come and talk with me. I have an open 
investigation, adn [sic] this is not going to be cleared up by us e-mailing each 
other. We can go about this one of two ways. I can either obtain a warrant for 
your arrest on the information I have right now, or you can come in and explain 
to me your side of the situation. At the current time I do not have proof that 
she broke into your email, and can not get that proof without your assistance.
 
Call 
me.
 
Detective 
Sparby
972.874.3348
  
 
[The 
following reply was sent on November 16 at 4:52 p.m.:]
 
ok 
i am going to say a couple things first you do not have permission to e-mail me, 
and you are trespassing on personal property without a warrant, i do not live in 
lewisville no more so i do not know how to go down and contact you, another 
thing is this, i will be contacting the state if you keep on harrassing [sic] me 
and i will speak with your boss kenneth brooker chief [sic] of police. another 
thing also the district attorney that my mom knows really well told me you have 
no proof i am personally sending melissa e-mails, and me personally i am sorry 
but i am not going to waste my precious time for somebody that is not worth my 
time.
 
 
        Although 
Sparby had no certainty as to the authenticity of the e-mail messages between 
herself and the correspondent at baby20col@yahoo.com, and testified that other 
people besides Massimo may have had knowledge of the contents of those e-mails, 
only Massimo went to the police station and complained to Corporal Lucio and 
Lieutenant Mitchell that Sparby was harassing her after the final e-mail 
alluding to the author filing a harassment complaint with the police.  In 
early December 2002, Sparby learned from Kreshak that she had witnessed Massimo 
sending Taylor a threatening e-mail the previous October from another Yahoo 
account address.  At some point, Sparby also received information from 
Kreshak that Massimo had spoken to someone named Benny Verver (phonetic 
spelling) about having Sparby killed. Massimo was arrested in Lewisville on 
January 25, 2003 and charged with two counts of harassment by electronic 
communication.
        Massimo 
pled not guilty on July 28, 2003 and was found guilty by a jury to one count of 
harassment by electronic communication, a violation of section 542.07(a)(2) of 
the Texas Penal Code. See Tex. 
Penal Code Ann. § 
542.079a)(2) (Vernon Supp. 2004). The jury assessed punishment at 180 days’ 
confinement in the Denton County Jail and a $1000 fine with a recommendation 
that Massimo be placed on community supervision, which sentence was imposed the 
same day.
III. Massimo’s Motions to Dismiss and for 
Continuance
        On 
July 11, 2003, Massimo filed her Motion for Discovery and Inspection of 
Evidence, requesting copies of e-mails which the prosecution alleged were sent 
by Massimo to Taylor.  At the pretrial hearing on July 25, 2003, the trial 
court granted Massimo’s request and told the prosecution to “[g]o ahead and 
make him a copy of those and get them to him by the end of th[e] day.”  
The following Monday, July 28, Massimo’s counsel complained that he had not 
gotten the e-mails in question until that morning, the day of trial, and 
asserted a motion to dismiss the case for failure to provide him the e-mails. 
The following exchange took place in connection with the dismissal motion:
 
THE 
COURT: So you presented yourself to the DA’s office before five o’clock on 
Friday to pick up those documents?
 
[DEFENSE 
COUNSEL]: My understanding, they were supposed to be faxed to me.
  
THE 
COURT: No, sir, you were supposed to get those documents yourself. No one ever 
mentioned anything about anything being faxed to you.
 
 
        In 
points one and two, Massimo complains that the trial court erred in overruling 
her Motion to Dismiss and to Prevent the Prosecution from Introducing Evidence 
that the State Failed to Disclose Pursuant to a Pretrial Discovery Order (the 
e-mails provided to him on the day of trial), and further erred by not granting 
a continuance in light of the late receipt of the e-mail evidence. It is 
axiomatic that a court may prevent the introduction of State’s evidence if it 
has been withheld though subject to disclosure under a discovery order, or in 
violation of the discovery order. Lindley v. State, 635 S.W.2d 541, 543 
(Tex. Crim. App. 1982); Hollowell v. State, 571 S.W.2d 179, 180 (Tex. 
Crim. App. 1978). However, such is not the case here. It is apparent from the 
verbal exchange between the trial judge and defense counsel that the judge 
expected defense counsel to pick up the documents that he wanted, and had known 
about it for some time, but counsel failed to do so. This is far from unlawfully 
withholding evidence and violating a discovery order and does not warrant 
dismissal or suppression of the evidence. Further, the only reason articulated 
by defense counsel to the court as to his need for the e-mails was to hire an 
expert to determine their source. An expert can be retained without the contents 
of the e-mails, and as Massimo had been represented by counsel since April 28, 
2003, and yet waited until seventeen days before trial to file her Motion for 
Discovery and Inspection of Evidence, the failure to obtain an expert or obtain 
the e-mails until the eve of trial can hardly be the fault of the State. 
Therefore, Massimo has shown no harm in obtaining the e-mails on the Monday of 
trial instead of the Friday before trial, and was at least partially, if not 
totally, responsible for their last-minute production.
        Further, 
had there been a violation of a trial court’s pre-trial discovery order which 
caused surprise to Massimo, the proper procedure at that point would have been 
to request a continuance of the trial.  Duff-Smith v. State, 685 
S.W.2d 26, 32 (Tex. Crim. App.), cert. denied, 474 U.S. 865 (1985).  
Moreover, the motion for continuance must be written and sworn.  Tex. Code Crim. Proc. Ann. arts. 29.03, 
29.08 (Vernon 1989).  If a proper motion for continuance to obtain evidence 
is denied, a motion for new trial is required, which by affidavit or other 
evidence shows the nature and materiality of the missing evidence.  White 
v. State, 657 S.W.2d 877, 881 (Tex. App.—Fort Worth 1983, no pet.).  
No written continuance motion was filed, nor was even a formal oral motion 
presented—only a complaint by Massimo’s counsel that he needed an expert and 
did not have one, which was brought to the court’s attention “30 minutes 
after the case was set for trial today.”  The Court construed this 
as a request for a continuance and denied it.  As procedural requirements 
for a continuance were not followed in this case, nor has harm been shown, and 
bearing in mind that the review of a ruling on a motion for continuance is under 
the abuse of discretion standard,[4] we cannot say 
that the trial court erred in failing to dismiss the case, suppress the e-mails, 
or abused its discretion in denying what the trial court construed as an oral 
motion for continuance.  Massimo’s points one and two are overruled.
IV. Exhibits 1 and 6
        Massimo 
next assigns error in her points three and four, complaining that the trial 
court erred in admitting State’s Exhibits 1 and 6 because they were not 
properly authenticated and additionally because Exhibit 6 was hearsay.  
Massimo objected to the introduction of Exhibit 1 on the grounds that it was not 
properly authenticated and was not linked to her.  We review the trial 
court’s decision to admit evidence under an abuse of discretion 
standard.  Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 
2001).  We will not reverse a trial court’s ruling unless that ruling 
falls outside the zone of reasonable disagreement.  Id.
        Texas 
Rule of Evidence 901(a) states that “[t]he requirement of authentication or 
identification as a condition precedent to admissibility is satisfied by 
evidence sufficient to support a finding that the matter in question is what its 
proponent claims,” while subsection (b) of the rule illustrates examples of 
authentication or identification meeting the requirements of the rule, including 
“[a]ppearance, contents, substance, internal patterns, or other distinctive 
characteristics, taken in conjunction with circumstances.” Tex. R. Evid. 901(a), (b)(4). There is a 
paucity of case law applying the evidentiary rule to e-mails, but one federal 
court, applying identical Federal Rule of Evidence 901(a) and (b)(4), found that 
a district court had not abused its discretion in admitting e-mail evidence by 
applying Federal Rule 901(b)(4), utilizing characteristic evidence such as: (1) 
consistency with the e-mail address on another e-mail sent by the defendant; (2) 
the author’s awareness through the e-mail of the details of defendant’s 
conduct; (3) the e-mail’s inclusion of similar requests that the defendant had 
made by phone during the time period; and (4) the e-mail’s reference to the 
author by the defendant’s nickname. United States v. Siddiqui, 235 F.3d 
1318, 1322-23 (11th Cir. 2000), cert. denied, 533 U.S. 946 
(2001).[5]
        Distinctive 
internal characteristics have also served to authenticate documents in other 
contexts. For example, typewritten documents found in a briefcase belonging to 
an alleged conspirator of a murder defendant were authenticated by their 
contents, which included specific details about the alarm code and gate code to 
the victim’s house, an outline of the murder plot, and post-crime events and 
actions that tended to connect the defendant with the murder. See Angleton v. 
State, 955 S.W.2d 655, 658 (Tex. App.—Houston [14th Dist.] 
1997), rev’d on other grounds, 971 S.W.2d 65 (Tex. 1998). Documents 
found in trash discarded outside a drug defendant’s home were also 
authenticated by characteristic evidence, such as the defendant’s address 
found on the documents. See United States v. Baker, 855 F.2d 1353, 1359 
(8th Cir. 1988), cert. denied, 490 U.S. 1069 (1989).
        A 
review of the characteristic evidence concerning Massimo’s purported Exhibit 1 
e-mail yields the following: (1) Exhibit 1 was sent to Taylor’s e-mail address 
shortly after she and Massimo had a physical altercation, and the e-mail 
referenced that altercation; (2) Taylor recognized Massimo’s e-mail account 
address since she had received e-mails from Massimo previously from this e-mail 
address; (3) Taylor testified that Massimo usually used the e-mail account 
babycol20@yahoo.com and that both she and Massimo utilized Yahoo personal 
accounts; (4) Taylor testified that only Massimo and a few other people knew 
about things discussed in State’s Exhibit 1; (5) Taylor testified that the 
contents of the e-mails and the way the e-mails were written were the way in 
which Massimo would communicate; (6) Kreshak testified that she witnessed 
Massimo send a similar life-threatening e-mail to Taylor using the same 
vulgarities which appeared in State’s Exhibit 1, albeit from a different 
e-mail address; and (7) Massimo told Kreshak that she was sending the 
threatening e-mail because she and Taylor did not like each other, which 
attitude is also reflected in State’s Exhibit 1. Based on all of the foregoing 
and reviewing the requirements of Rule 901 of the Texas Rules of Evidence, we 
cannot say that the trial court’s decision to admit State’s Exhibit 1 over a 
lack-of-authentication objection was so unreasonable as to constitute an abuse 
of discretion.
        Likewise, 
the characteristic evidence concerning State’s Exhibit 6, purported e-mails 
sent from Massimo to Sparby, yields the following:  (1) the e-mails were 
signed ”Amanda,” Massimo’s given name, and were sent from an e-mail 
address Taylor recognized as belonging to Massimo, babycol20@yahoo.com; (2) the 
e-mails exchanged between Massimo and Sparby are consistent with Sparby’s 
testimony that Massimo was not responding to her efforts to talk to her and was 
uncooperative; (3) the author of the e-mails knew the subject of the 
investigation, harassing e-mails, before Sparby revealed that to her; and (4) 
the November 16 e-mail threatened to report Sparby for harassment, and was sent 
the same day that Massimo appeared at the police station in person to file 
harassment charges against Sparby.  While Massimo asserted defensively that 
someone was impersonating her and sending the e-mails on her behalf, she 
introduced no evidence to support this assertion, and Taylor specifically denied 
such action.  Again, in reviewing the admission of evidence under Texas 
Rules of Evidence 901, and under the abuse of discretion standard, we cannot say 
that the trial court abused its discretion in admitting State’s Exhibit 6 over 
a lack-of-authentication objection.
        Massimo 
further argues that State’s Exhibit 6 is hearsay and is not a statement 
against interest,[6] because there is no exposure of 
the defendant to criminal liability and there is no showing or trustworthiness 
of the statements, citing Rose v. State, No. 2-02-272-CR, 2003 WL 
22725583, at *3 (Tex. App.—Fort Worth Nov. 20, 2003, no pet.) (not designated 
for publication).
        According 
to Texas Rule of Evidence 801, a statement is not hearsay if it is a written 
verbal expression offered against the party and is the party’s own statement 
in their individual capacity.  Tex. 
R. Evid. 801(a), (e)(2)(A).  State’s Exhibit 6 contains written 
verbal expressions for which there was evidence that the statements were made by 
Massimo as previously discussed, who was a party, and was offered against 
Massimo in the sense that Massimo would not admit she sent State’s Exhibits 1 
and 6.  It verified her e-mail address, contained her language pattern, and 
demonstrated she knew about the harassing e-mails to Taylor before being told by 
Sparby who had only stated it was about “harassment”, the subject of her 
investigation.  Further, the e-mail threats subject to prosecution were not 
contained in State’s Exhibit 6, but in State’s Exhibit 1.  Therefore, 
the admission of State’s Exhibit 6, if erroneous, was harmless.  
Massimo’s points three and four are overruled.
IV. Legal and Factual Sufficiency
        Massimo’s 
final two points argue that the evidence is legally and factually insufficient 
to support the jury’s verdict.  In reviewing the legal sufficiency of the 
evidence to support a conviction, we view all the evidence in the light most 
favorable to the verdict in order to determine whether any rational trier of 
fact could have found the essential elements of the crime beyond a reasonable 
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 
(1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  
This standard gives full play to the responsibility of the trier of fact to 
resolve conflicts in the testimony, to weigh the evidence, and to draw 
reasonable inferences from basic facts to ultimate facts. Jackson, 443 
U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency 
review, we may not sit as a thirteenth juror, re-evaluating the weight and 
credibility of the evidence and, thus, substituting our judgment for that of the 
fact finder.  Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 
1999), cert. denied, 529 U.S. 1131 (2000).
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party.  See 
Zuniga v. State, No. 539-02, 2004 WL 840786, at *4 (Tex. Crim. App. Apr. 21, 
2004).  The only question to be answered in a factual sufficiency review is 
whether, considering the evidence in a neutral light, the fact finder was 
rationally justified in finding guilt beyond a reasonable doubt.  Id. 
at *7.  There are two ways evidence may be factually insufficient: (1) the 
evidence supporting the verdict or judgment, considered by itself, is too weak 
to support the finding of guilt beyond a reasonable doubt; or (2) when there is 
evidence both supporting and contradicting the verdict or judgment, weighing all 
of the evidence, the contrary evidence is so strong that guilt cannot be proven 
beyond a reasonable doubt.  Id.  “This standard acknowledges 
that evidence of guilt can ‘preponderate’ in favor of conviction but still 
be insufficient to prove the elements of the crime beyond a reasonable 
doubt.”  Id.  In other words, evidence supporting a guilty 
finding can outweigh the contrary proof but still be insufficient to prove the 
elements of an offense beyond a reasonable doubt.  Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at *4; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder’s. Zuniga, 2004 WL 840786, at *4.
        A 
proper factual sufficiency review requires an examination of all the evidence. Id. 
at *7, 9. An opinion addressing factual sufficiency must include a discussion of 
the most important and relevant evidence that supports the appellant’s 
complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. 
App. 2003).
        In 
a single sentence not connected to any point on appeal, Massimo alleges that 
“[t]he prosecution did not prove that the offense alleged in the first 
paragraph of the information occurred in Denton County, Texas.”  We will 
construe this to be a complaint connected to the factual and legal insufficiency 
points.  While this compliant contains neither argument nor authority, if 
it is a complaint concerning venue, it was not addressed at the trial court and 
has been waived.  Mosley v. State, 643 S.W.2d 212, 215-16 (Tex. 
App.—Fort Worth 1982, no pet.).  Further, the record reveals that Taylor 
received the e-mail in Denton County. See Haigood v. State, 814 
S.W.2d 262, 263 (Tex. App.—Austin 1991, pet. ref’d).
        Having 
set forth and reviewed the relevant evidence in this case as it touches on 
Massimo’s legal and factual insufficiency complaints, we cannot say the 
evidence is either legally or factually insufficient, and overrule Massimo’s 
points five and six.
V. Conclusion
        Having 
overruled Massimo’s points on appeal, we affirm the trial court’s judgment.
 
 
                                                                  BOB 
MCCOY
                                                                  JUSTICE
 
 
PANEL 
A:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.
 
PUBLISH
 
DELIVERED: 
August 5, 2004


NOTES
1.  
Exhibit 1 reads:
listen 
bitch if you have something to say about me you better to say it to my face i am 
tried of everybody saying you are saying shit behind my back well listen up if i 
hear it again i will kill or have you killed, so watch your back bitch, believe 
me i might have taken it easy on whooping your dam ass at danielle’s but all i 
got to say is the next time i see you i will kill you so you better watch your 
fuckin mouth slut. second of all you know how you are calling me a slut behind 
my back well all i can say is look in the mirror bitch because unlike you i do 
not genital herpes you sluty ass whore.
2.  
At trial Kreshak could not identify the e-mail header on State’s Exhibit 1, 
“babycol20@yahoo.com,” as Massimo’s. She recalled that the threatening 
e-mail she witnessed had an account under the name “amstar and something at [Y]ahoo.com,” 
although Detective Misty Sparby never located such an e-mail account.
3.  
Sparby testified she believed she spoke to Massimo once on the phone at some 
point.
4. 
Vasques v. State, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002).
5.  
See also Kupper v. State, 05-03-00486-CR, 2004 WL 60768, at *3 (Tex. 
App.—Dallas Jan. 14, 2004, no pet.) (not designated for publication) (holding 
that admission of e-mails was not an abuse of discretion where the e-mails were 
recovered from defendant’s work computer, contained the names of the defendant 
and the victim and the victim’s e-mail address, and discussed similar fact 
scenarios).
6.  
See Tex. R. Evid. 803(24).