COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS. 2-05-024-CR 

       2-05-025-CR

SHANE LEE HALE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In two points, Shane Lee Hale asserts that the trial court abused its discretion by allowing evidence of child pornography found on a computer at Hale’s home and by failing to grant a mistrial regarding the same issue.
(footnote: 2)  We affirm.

II. Background

In May of 2002, April discovered her young daughter Miriam performing oral sex on Miriam’s younger half-brother, Mike.
(footnote: 3)  After questioning Miriam, April determined that Miriam had learned to do this from her father, Hale, and that she had also done it with ”Uncle Shane,” Michael Shane Gardner.  At trial, Gardner testified to an incident that had occurred when he had been visiting Hale.  While Gardner was watching television, Hale called him to the bedroom, where Hale wanted him to try something that Hale himself had been doing. Gardner stated that when he entered the room, Miriam began to dress herself, only to stop when told by Hale, “[N]o, it was okay.”  At Hale’s behest, Gardner proceeded to have sexual contact with Miriam, touching her genitals with his mouth while Hale was simultaneously having sexual contact with Miriam by having her mouth contact his penis.

Gardner also testified that Hale did not direct Miriam and that she seemed to already know what to do.  According to Gardner, he had lain down on the bed, and Hale placed Miriam on him such that Gardner’s mouth was in contact with her genitals.  Eventually, Miriam changed positions so as to place her mouth in contact with Gardner’s penis while Hale caused his own mouth to have contact with Miriam’s genitals.  Finally, Hale placed Miriam on Gardner such that there was genital contact between Miriam and Gardner before Hale and Miriam engaged in genital contact.

Gardner also testified that Hale claimed that Miriam enjoyed engaging in this type of sexual contact, and that Hale claimed that he had engaged in such behavior with Miriam on a previous occasion while at a deer lease.
(footnote: 4)  According to Gardner, Hale told him that he was using the restroom when Miriam entered and asked if she could touch his penis.  From this act of touching allegedly initiated by Miriam, the sexual contact between her and Hale had progressed to oral-genital contact, with Miriam placing her mouth on Hale’s penis and with Hale placing his mouth on Miriam’s genitals, all of which eventually progressed to genital-to-genital contact.

Gardner testified that he was currently serving a thirty-five year prison sentence in his own case.  Further, he had appealed his case and had reached an agreement with the prosecution regarding a reduction of the upper limit of the sentence that he could receive in any potential re-trial of his case, had given a written confession to a Texas Ranger from the Department of Public Safety,
(footnote: 5) and had pleaded guilty to his own charges.

Miriam also testified at trial.  According to Miriam, Hale would always come at night to get her to engage in sexual activity with him.  Miriam testified that if she was asleep, Hale would wake her up and take her to his bedroom to engage in the sexual activity with her.  Miriam also stated that Hale would have her touch his “Weiner” with her mouth and that Hale had shown her how to perform such conduct, and Miriam in fact demonstrated to the jury what she had been instructed to do.  Miriam could not remember how many times Hale had made her engage in such conduct, but she remembered that he had done so “a lot.”  She also testified that Hale’s wife had never been present on the occasions when Hale would come to take her to his bedroom to engage in sexual contact with her.  She also recalled an occasion when Gardner and Hale had been involved in sexual activity with her.  According to Miriam, on that occasion Hale made her “suck his Weiner and go up and down,” and she had been made to perform the same act with Gardner.  Finally, Miriam testified that her mother, April, had found her engaging in such conduct with Mike on one occasion.

The defense presented the testimony of Hale, his mother, and his wife. 
Hale completely denied the allegations against him.  The defense claimed in effect that April had coached Miriam into making the accusations in response to Hale’s having broached the idea of becoming the custodial parent of Miriam, as opposed to April’s remaining as Miriam’s custodial parent.  
On cross-examination, Hale also testified to a conspiracy among Gardner,
(footnote: 6) April, Miriam, and Texas Ranger Kenny Ray concerning the sexual abuse allegations, and he denied any knowledge of a certain pornographic website on his computer (the “Lolita” website), while admitting that he had seen pornographic material on a computer.  He did not have an explanation for how the computer showed “hits” on the website.

After considering all of the evidence, the jury convicted Hale of two counts of aggravated sexual assault of a child.  During the punishment phase of the trial, the State introduced the testimony of three girls who had all been fifteen years old when Hale, who was married at the time and after having given them beer, had tried to have sex with one of them, and had succeeded in having sex with the other two.

Additionally, the State introduced the testimony of Daniel Baxter, the uncle of one of the two fifteen-year-old girls Hale had seduced, who testified that Hale had admitted how he “liked women before they got hair” and how he liked the look of women’s genitals.  According to Baxter, he was disgusted by some of Hale’s comments and by Hale’s using his hands to illustrate how, in his opinion, female genitalia were “so perfect” at a certain time.

Hale’s mother and wife testified that Hale had no felony convictions, had always provided for his family, and had wanted to adopt his wife’s two sons even before he and his wife had married.  They also testified that they would have no problem permitting Hale to have unsupervised access to six-year-old females and/or fifteen-to-sixteen-year-old females.  Thereafter, the jury deliberated and subsequently the trial court imposed the sentences returned by the jury, two life terms and a $10,000 fine, but ordered that Hale serve the sentences concurrently, not consecutively as the State had requested.

III.  The Computer-Pornography Testimony

A. The Assertions of the Parties

In his first point, Hale asserts error on the part of the trial court in failing to exclude testimony that a computer was found at his residence containing child pornography.  First, Hale asserts that the child pornography is only relevant to show conformity of character, which is impermissible, and second, any probative value of the evidence is outweighed by its unfair prejudice. We agree with Hale that the Texas Rules of Evidence provide that any relevant evidence is generally admissible except as provided by the rules,  
Montgomery v. State
, 810 S.W.2d 372, 377 (Tex. Crim. App. 1991) (op. on reh’g), but that Rule 404 prohibits evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith,  
Tex. R. Evid
. 404(b); 
Santellan v. State
, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997).  However, he also points out that evidence of extraneous offenses may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident upon proper notice by the proponent of the evidence to the opposing party, 
Santellan
, 939 S.W.2d at 168
;
 Taylor v. State
, 920 S.W.2d 319, 322 (Tex. Crim. App.), 
cert. denied
, 519 U.S. 951 (1996); 
Montgomery
, 810 S.W.2d at 387-88, and that once the trial court determines that the evidence is relevant, and upon proper objection, the trial court must determine whether the evidence complies with Rule 403,  
Santellan
, 939 S.W.2d at 169.  Rule 403 provides that relevant evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  
Tex. R. Evid. 
403.  The trial court should look at four factors in performing this balancing test:

(1) the evidence’s inherent probative value;

(2) its potential to impress the jury in some irrational but indelible way;

(3) the amount of trial time the proponent needs to develop such evidence; and 

(4) the proponent’s need for the evidence.

Mozon v. State
, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); 
Jones v. State
, 962 S.W.2d 158, 165 (Tex. App.—Fort Worth 1998, no pet.).

The State responds that any character-conformity complaint Hale has made on appeal has not been preserved for this court’s review due to Hale’s failure to have articulated his character-conformity-based complaint in the trial court.  Additionally, the State asserts that the remaining portion of Hale’s first point cannot be sustained because the complained-of evidence should have been excluded under the balancing test enunciated in Rule 403.  The State argues that the complained-of evidence was admissible because (1) Hale “opened the door” to the admission of the evidence by his cross-examination of one of the State’s witnesses, which injected into the trial a matter to which the State was entitled to respond, (2) the admitted evidence was merely cumulative of other evidence that Hale himself injected into the trial, (3) the evidence was admissible to demonstrate Hale’s motive in having committed the crimes against his daughter, and (4) any error alleged by Hale was harmless, to wit, the evidence failed to have any substantial and/or injurious impact or influence upon the jury’s verdicts.

B. Legal Analysis

We first address the State’s waiver argument.  We agree with the State that to preserve a complaint for appellate review, the complaining party must have lodged a timely and specific objection, motion, or request at the trial court level that stated the grounds for the ruling sought by the requesting party with sufficient clarity to make the trial court aware of the complaint or request and the specific grounds therefor.  
See 
Tex. R. App. P. 
33.1; 
Reyna v. State
, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005).  We also agree with the State that even some constitutional claims are subject to being waived for appellate review if they are not preserved in the trial court by compliance with the aforementioned rules regarding preservation of error.  
See Jimenez v. State
, 32 S.W.3d 233, 235 (Tex. Crim. App. 2000).  
Why?  Three reasons:  1) to notify the trial judge of the exact basis of the relief requested so as to provide the judge an opportunity to make a decision relative to that basis when he or she is in a position to do so; 2) to afford the opponent thereof an opportunity to respond thereto in a substantive fashion,
 e.g., Reyna
, 168 S.W.3d at 179; 
Janecka v. State
, 823 S.W.2d 232, 243-44 (Tex. Crim. App. 1992) (op. on reh’g); 
Zillender v. State
, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977); and 3) fairness—“[f]airness to all parties requires a party to advance his complaints at a time when there is an opportunity to respond [to] or cure them,”
 
Loredo v. State
, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004)
.

We also agree with the State that in general when an appellant has denied the trial court any opportunity to rule on an error espoused on appeal, nothing exists for the appellate court to review relative to that complaint because there is no ruling from the trial court for the appellate court to assess.  
See Flores v. State
, 871 S.W.2d 714, 720 (Tex. Crim. App. 1993), 
cert. denied
, 513 U.S. 926 (1994).  Under such circumstances where the complaining party has failed to effectively communicate his or her desire to the trial court, appellate courts should hold that the complaints advanced only on appeal have been lost.  
See Lankston v. State
, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

Additionally, a complaint may be waived if the complaint on appeal does not comport with the objection lodged in the trial court.  
See Reed v. State
, 927 S.W.2d 289, 291 (Tex. App.—Fort Worth 1996, no pet.); 
Judd v. State
, 923 S.W.2d 135, 138 (Tex. App.—Fort Worth 1996, pet. ref’d).  This is true even of some constitution-based complaints.  
See, e.g., Holland v. State
, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991).

C. Application

The initial testimony concerning a pornographic website occurred during the cross-examination of the State’s witness, Texas Ranger Kenny Ray:

A. . . . There’s some details that Gardner added that I had no knowledge of that later proved to be true.

. . . .

Q.  Can you be specific as to what they [sic] particular detail was?

A.  He indicated that there was 
a computer in Shane Hale’s house 
that Shane used to access a website 
that contained pedophile images
.  I had no knowledge of that prior to. [Emphasis supplied.]

Q.  Did you recover a computer?

A.  I did, indeed, sir.

. . . .

Q.  And you looked at the computer?

A.  We didn’t analyze the computer that night.  We took the computer and had it analyzed forensically.

. . . .

Q.  So if you saw what looked like a stack of magazines, or a stack of what could be printouts from the computer, or pictures, you looked through that stuff?

A.  Yes, sir.

After this testimony, a discussion at the bench outside the hearing of the 

jury occurred, part of which is as follows:

PROSECUTOR: . . . [T]he accessing the Lolita website . . . I’d like to ask that that was followed up on and investigated to corroborate it.  And . . . the specifics that . . . the Defense has raised that Michael Shane Gardner said that he had no knowledge of . . . . I believe the Defense has opened the door to that.

. . . .

THE COURT: I think, Counsel, this is more in the line of you asked what he thought if it was later corroborated, Mr. Gardner’s statement and he was testifying to that and he said he found the computer with pornographic sites.  We can go into that.

. . . .

DEFENSE COUNSEL: . . . I would object to that line of questioning as being – 
under Rule 403, as being more prejudicial than probative
, and I would ask for a running objection as to questions about the website and the computer. [Emphasis supplied.]

THE COURT: Overruled.

DEFENSE COUNSEL:  May we have a running objection?

THE COURT:  I will give you a running objection.

On redirect examination by the State’s counsel, the following exchange occurred:

Q.  Ranger Ray, you said that you recovered the Defendant’s computer?

A.  Yes, ma’am.

Q.  Did you have it forensically analyzed?

A.  Yes, ma’am.

Q.  And did that reveal that he had, indeed, accessed the Lolita websites?

A.  Yes, ma’am.

Q.  What is the Lolita website?

A.  Well, I’ve never been there, but I understand it’s a pornographic website that has links and access to where people can view child pornography.

Hence, an examination of the objection to this testimony reveals that there was a Rule 403 probative-verus-prejudicial objection made, but not a Rule 404  conformity-of-character objection made, and because Hale did not direct us to such an objection in the record, the latter is not preserved for our review. 

We next turn to the preserved Rule 403 objection.  An examination of the record reveals that Hale’s counsel’s examination of Ray, a portion of which has previously been set forth, was attacking the accuracy of a statement given by Gardner which had been written out by Ray and signed by Gardner. Part of Ray’s response to the attack-of-accuracy questioning was that it contained details that no one else had revealed and that had turned out to be true, such as the pornography-laden computer.  No objection was made when Ray’s response to a question from Hale’s counsel identified the “pedophile”-laden computer, and in fact, two more questions were asked about the computer. Hence, from this point the proverbial horse was out of the barn—the jury was thereafter aware that there was a computer found in Hale’s house that contained “pedophile images.”  The subsequent Rule 403 objection was locking the stable door after the horse was stolen.
(footnote: 7)  Therefore, the later testimony that the computer did in fact contain pornographic images, the Lolita websites, was merely the State’s walking through the door opened by Hale, and the State clearly stayed within the scope of the pornographic computer information.

[O]therwise inadmissible evidence may be admitted if the party against whom the evidence is offered “opens the door.”  But, the party offering the evidence may not “stray beyond the scope of the invitation.” . . . “The wall, attacked at one point, may not be fortified at another and distinct point.”

Schutz v. State
, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997) (citations omitted). As this court has stated, “[i]t is well established that evidence which is used to fully explain a matter which is opened up by the other party need not be ordinarily admissible.”  
Mosley v. State
, 643 S.W.2d 212, 222 (Tex. App.—Fort Worth 1982, no pet.).  Further, when “the testimony at issue was merely a response to defense counsel’s contentions and implications in front of the jury . . . appellant is in no position to complain on appeal about the State’s response to these suggestions.” 
 Id.

Therefore, we hold that the trial court did not err by allowing the  complained-of testimony about the pornography-laden computer and the “Lolita” website because the State was merely walking through the door opened by Hale, and Hale’s objection to the pornography-laden computer testimony occurred well after the evidence was before the jury.  We overrule Hale’s first issue.

D.  Harm Analysis

Further, had error occurred, we would hold that Hale would be unable to show requisite harm.  Harm stemming from a trial court’s ruling admitting or excluding evidence is reviewed under Rule 44.2(b) of the Texas Rules of Appellate Procedure, since this is not an asserted error of constitutional dimension.  
See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  Texas Rule of Appellate Procedure 44.2(b) 
reads, “Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.”  
Tex. R. App. P
. 44.2(b).  A substantial right is affected only when “the error had a substantial and injurious effect or influence in determining the jury’s verdict.”  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  Evidence of guilt must be considered in conducting the harm analysis.  
See, e.g., Motilla v. State
, 78 S.W.3d 352, 357-58 (Tex. Crim. App. 2002).

E.  Application

This is hardly the problematic case of a single witness who recants, who has motive to fabricate abuse allegations, who has a history of known fabrications, and who has threatend the alleged adult abuser.  Here, the evidence is from multiple witnesses without a verified nefarious motive, without a history of lying and without threats from the abused of same.  A complete review of the record reveals that the admission of the evidence in all likelihood would not have harmed Hale.  Hale’s first issue is overruled.

IV.  Mistrial

Hale complains in his second issue that the trial court erred by not declaring a mistrial following further testimony concerning the Lolita website.  
 A.  The Testimony and the Motion for Mistrial

During the cross-examination of Hale at guilt-innocence phase of trial, the following exchange occurred:

Q: . . . .  There was a computer in your residence; is that right?

A:  Yes, sir.

Q:  Do you have access to a computer?

A:  Yes, sir.

Q:  Do you view pornographic material on your computer?

A:  No, sir.

Q:  Never?

A:  I’m not saying I’ve never seen pornographic material on a computer, no.  I mean I have, yes.

Q:  Did you review the – the results with regards to the – I guess, the forensic computer analysis of your computer?

A:  No, I don’t recall that.

Q:  Do you know what a Lolita website is?

A:  No, sir.

Q: You have no idea?

A:  It’s – I guess it’s a pornographic website is what’s been said.

Q:  Well --

A:  I mean, I’ve never been there, if that’s what – if that’s what you’re asking.

Q:  So you’re not aware that there were 208 hits –

DEFENSE COUNSEL: Objection.

Q.  – on your computer?

[DEFENSE COUNSEL]: Objection.  Counsel is trying to assert facts not in evidence with some document in evidence.

THE COURT: Sustained.

[DEFENSE COUNSEL]: I’d ask that –

THE COURT: But your legal objection is what, Counsel.

[DEFENSE COUNSEL]: Sidebar by Counsel.  It’s hearsay; relevance.

THE COURT: Sustained as to hearsay.

[DEFENSE COUNSEL]: I would ask that the jury be instructed to disregard his question.

THE COURT: The jury will disregard the question.

[DEFENSE COUNSEL]: We would ask for a mistrial.

THE COURT: Denied.

B.  Standard of Review

A trial court’s denial of a motion for mistrial is reviewed under an abuse of discretion standard.  
See Simpson v. State
, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), 
cert. denied
, 542 U.S. 905 (2004).  A mistrial is appropriate only for “highly prejudical and incurable errors.”  
Id. 
(quoting 
Wood v. State
, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)).  It should be used by a trial court to end proceedings when faced with error so prejudical that “expenditure of further time and expense would be wasteful and futile.”  
Wood
, 18 S.W.3d at 648.  Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer.  
See Simpson, 
119 S.W.3d at 272.

When a trial court is faced with a motion for mistrial after an objection has been sustained and an instruction to disregard has issued, it “in effect . . . conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone.”  
Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  The question of whether a mistrial should be granted thus involves “most, if not all, of the same considerations that attend a harm analysis.”  
Id.
  The appropriate test for evaluating whether the trial court abused its discretion in overruling a motion for mistrial is therefore the test originally set out by the Texas Court of Criminal Appeals in 
Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), 
cert. denied
, 526 U.S. 1070 (1999), for analyzing whether the trial court abused its discretion in overruling a motion for mistrial during closing guilt-innocence argument.  
Cf. Hawkins
, 135 S.W.3d at 77 (extending 
Mosley 
test to closing non-capital punishment phase); 
Martinez v. State
, 17 S.W.3d 677, 693-94 (Tex. Crim. App. 2000) (extending 
Mosley
 test to punishment phase of a capital trial).

Under 
Mosley
, in determining whether the trial court abused its discretion in denying a motion for mistrial, an appellate court must consider (1) the severity of the misconduct (its prejudicial effect); (2) the curative measures undertaken by the court or the prosecutor; and (3) the certainty of the punishment assessed absent the misconduct.  
See Martinez, 
17 S.W.3d at 693; 
Primes v. State
, 154 S.W.3d 813, 815 (Tex. App.—Fort Worth 2004, no pet.).

C.  Application

Without determining the fundamental question of whether the hearsay objection should have been sustained, we turn to the three-part 
Mosley 
test: (1) the evidence of the Lolita website was already properly before the jury through  Ray’s testimony, and hence the prejudicial effect of the testimony of the website through Hale was minimal; (2) the jury was immediately instructed to disregard the question referencing the Lolita website; and (3) a review of the record leads to the inescapable conclusion of the certainty of the conviction assessed.  Hale’s second point is overruled.

V.  Conclusion

Having overruled Hale’s two points, we affirm the judgment of the trial court.

PER CURIAM

PANEL F: MCCOY, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: August 31, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
This is the second appeal in this matter.  This case was originally remanded for a new trial, following a plea agreement to a forty-year sentence, over the issue of a non-testifying accomplice statement.  
Hale v. State
, 139 S.W.3d 418, 423 (Tex. App.—Fort Worth 2004, no pet.).

3:
We have used the fictitious names “April,” “Miriam,” and “Mike” for protection of the minor children in this opinion.

4:
Gardner also testified that Hale said that Miriam had claimed that her mother’s husband had enjoyed engaging in the same type of sexual contact. April testified, however, that Miriam had never made any type of sexual abuse outcry against April’s current husband, who married April near the time that she had discovered Miriam performing oral sex on Mike.

5:
According to the Texas Ranger, in securing the non-custodial, written confession from Gardner, Gardner had slumped in the seat of the Texas Ranger’s car and said, “I’m glad it’s finally over.”  Likewise, Gardner testified that he had felt like a “great weight” had been lifted when he spoke with the Texas Ranger.

6:
Apparently Gardner, under this theory, is serving a thirty-five year sentence for fabricating testimony of his abuse of Miriam in order to further this conspiracy.

7:
“[T]he English aphorism is also very old.  We find it in John Gower’s 
Confessio amantis 
(1390): ‘For when the grete Stiede Is stole, thanne he [Negligence] taketh hiede, and maketh the stable dore fast.’”  
Charles Earle Funk, Jr., 2107 Curious Word Origins, Sayings & Expressions 
701 (1993).